UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case No: 16-20572
                                              Hon. Victoria A Roberts

v.

HAROLD BELSER,

                Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [DKT. 14]**

## I.    INTRODUCTION

Defendant Harold Belser ("Belser") filed this motion to suppress the Government's allegedly illegally seized evidence from his home.

The Court **DENIES** Belser's motion.

## II.    BACKGROUND

The Dearborn Police Department received information from a confidential informant ("CI") that Belser was a heroin distributor. The CI told the police that s/he had known Belser for a couple of years and that s/he purchases heroin from Belser at his home. Officers Cpl. T. Donaldson and Cpl. Micallef drove the CI to Belser's home and showed him/her Belser's MDOC photo. The CI identified the home as Belser's and identified the person in the photo as Belser, whom the CI knew as ISRAK.

1

On August 1, 2016, the police monitored a phone call between the CI and Belser. The CI asked to purchase heroin from Belser. Belser told the CI to come to his home at 8461 Vaughan St. Detroit, MI to make the purchase.

Officers gave the CI money recorded with a time/date stamp for the purchase and searched the CI for contraband before s/he entered Belser's home. Cpl. Alkubani observed the CI walk in Belser's home. The officers monitored the CI on a transmitting device. While the device did not record, it transmitted activity to the officers for them to hear.

Belser did not have the drugs when the CI arrived; he called to have someone bring a delivery to him. While they waited, officers heard the sound of someone in the home racking a handgun. Officers say approximately twenty minutes later an unknown male arrived in a dark Buick to make the delivery. According to officer Donaldson's affidavit, "officers heard what appeared to be a drug transaction between Belser and [the CI]." After the transaction was complete, the unknown male left.

A couple of minutes later, the police heard someone breathing deeply and gasping for air. They then heard Belser yelling and slapping someone to wake up. After Belser yelled "breathe don't do this to me," the officers immediately went in the home; they believed the CI overdosed and had a medical emergency.

When they went inside the home, the officers found the CI slumped over in the living room. Medics responded and revived the CI. Officers searched the CI and found twenty-five packets of fentanyl in the CI's front left pocket. They also searched Belser and found $170 of the pre-recorded money and a cell phone. Officers arrested Belser. They conducted a protective sweep to make sure the home was safe. They secured the

residence, and waited for a search warrant to search the home. They obtained a warrant based on the facts stated here.

After officers took Belser into custody, Sgt. Grandison interviewed him about a triple homicide that occurred on June 6, 2016. In that video-recorded interview, Belser admitted to possessing the handgun found in his home and distributing drugs to the CI.

On August 23, 2016, the Government indicted Belser on four counts: (1) distribution of a controlled substance; (2) possession of a stolen firearm; (3) felon in possession of a firearm; and, (4) possession of a firearm in furtherance of drug trafficking crime.

Belser asks the Court to: (1) find that the officers did not have probable cause to arrest him; (2) find that the state court lacked probable cause to issue a search warrant; (3) suppress evidence seized at his home; and, (4) suppress statements he made after his arrest. The Government argues that the search was lawful because of the Emergency Aid Doctrine, and says officers did not coerce Belser to make a confession. Belser also argues that the police cannot create an exigency and then rely on it to excuse a warrantless entry into his home.

The facts of this case are not in dispute, but the parties dispute the application of the law to the facts.

### III.   DISCUSSION

Belser argues that the warrantless entry into his home was unconstitutional and violated the U.S. CONST. amend. IV. He says that his subsequent arrest, the searches, and confession were the fruit of the officers' initial illegal entry. The primary issue the

Court must determine is whether the officers' warrantless entry into Belser's home

violated the Fourth Amendment.

### A.  Fourth Amendment Principles

The Fourth Amendment protects against unreasonable searches and seizures.

*See id.* ("The right of the people to be secure in their persons, houses… against

unreasonable searches and seizures, shall not be violated."). Officers must base an

arrest and search on probable cause and execute a search with a valid warrant. *See*

*Katz v. United States*, 389 U.S. 347, 357 (1967) (Fourth Amendment imposes

presumptive warrant requirement for searches and seizures).

"[W]arrants are generally required to search a person's home or his person

unless 'the exigencies of the situation' make the needs of law enforcement so

compelling that the warrantless search is objectively reasonable under the Fourth

Amendment." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citing *Mincey v.*

*Arizona*, 437 U.S. 385, 393-394, (1978)).

Warrantless searches are presumptively unreasonable under the Fourth

Amendment and "the government bears a 'heavy burden' of proving exigency."

*Goodwin v. City of Painesville*, 781 F.3d 314, 329 (6th Cir. 2015). Exigent

circumstances exist when "'real immediate and serious consequences' will 'certainly

occur' if a police officer postpones action to obtain a warrant." *See Id.* (citing *United*

*States v. Williams,* 354 F.3d 497, 503 (6th Cir. 2003)).

### B.  The Emergency Aid Doctrine Applies

Belser argues that the officers' warrantless entry into his home was

unconstitutional and exigent circumstances did not justify the entry. He says that officers

4

did not enter his home to prevent immediate destruction of evidence; rather, they only entered to determine if the CI disregarded their commands to not use the purchased drugs and if he had an adverse reaction from doing so.

This appears to be a concession by Belser that Defendants entered his home to see if the CI had overdosed on drugs.

Imminent destruction of evidence is not the only exigent circumstance that is an exception to the warrant requirement. The Sixth Circuit identified four "exigent circumstances" that give rise to the warrant requirement exception: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; or, (4) a risk of danger to the police or others. *Williams,* 354 F.3d 497, 504.

This risk of danger exception is known as the Emergency Aid Doctrine. *See Schreiber v. Moe, 596 F.3d 323, 329-30* (6th Cir. 2010) (citing *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) ("[O]fficers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.").

The Government argues that the police entered Belser's home because of a suspected drug overdose and to render emergency aid to the CI. The Government relies on *Fisher* to argue that officers had an objectively reasonable basis for believing that a person in the house was in need of immediate aid. *Id.* 558 U.S. 45, 47.

In *Fisher*, officers responded to a report that a man was "going crazy" in his home. *Id.* On arrival officers stayed outside and found: (1) extensive damage to the property; (2) a truck in the driveway with blood on the hood and on clothes inside; (3) the man throwing things and screaming in the home; and, (4) the back door of the home locked and a couch in front of it blocking entry. *Id.*

Through a window, officers could see that the man had a cut on his hand, so they asked him if he needed medical attention. *Id.* He responded "no," and told the officers to get a warrant. *Id.* An officer pushed his way through the front door and partially opened it. *Id.* Through the window of the open door, the officer saw the man pointing a gun at him and the officer withdrew. *Id.*

The state charged the man with assault with a dangerous weapon. The trial court held that the officer violated the man's Fourth Amendment right to be free from a warrantless entry. The Michigan Court of Appeals affirmed. The U.S. Supreme Court reversed, holding that the officers' actions were reasonable under the Emergency Aid Doctrine: "officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." *Fisher*, 558 U.S. 45, 47, 49.

Here, the officers heard Belser yelling, "breath don't do this to me" and what sounded like him slapping someone to wake up. Officers could also hear someone breathing deeply and gasping for air. Since it appeared that only Belser and the CI were in the home, it was objectively reasonable for the officers to conclude that the CI was in the throes of an emergency.

The Court finds that the officers' entry into Belser's home was lawful under the Emergency Aid Doctrine.

### C. The Police Did Not Create The Exigent Circumstances

In reaching the above conclusion, the Court finds that the Defendants did not create the emergency.

There is an exception to the exigent circumstances rule, the "police-created exigency doctrine." *Kentucky v. King*, 563 U.S. 452, 461 (2011). "Under this doctrine,

police may not rely on the need to prevent destruction of evidence when that exigency was "created" or "manufactured" by the conduct of the police." *See Id.* citing *United States v. Chambers,* 395 F.3d 563, 566 (6th Cir. 2005) ("[F]or a warrantless search to stand, law enforcement officers must be responding to an unanticipated exigency rather than simply creating the exigency for themselves") (*abrogated on other grounds*); *United States v. Gould,* 364 F.3d 578, 590 (5th Cir. 2004) (en banc) ("[A]lthough exigent circumstances may justify a warrantless probable cause entry into the home, they will not do so if the exigent circumstances were manufactured by the agents" (internal quotation marks omitted) (*abrogated on other grounds*)).

Belser argues that the police created the exigency by using an unreliable drug user with an outstanding parole absconder arrest warrant as their CI. He says the officers' reckless disregard of the CI's lack of credibility was the proximate cause of the exigency. However, proximate cause is not the test to determine if the police created the exigency; the Court must look at the officers' actions preceding the seizure. There is no evidence that the officers either violated the Fourth Amendment or threatened to do so before they entered Belser's home. *King*, 563 U.S. 452, 463 ("The Fourth Amendment requires only that the steps preceding the seizure be lawful… the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment.").

Belser relies on *Williams* to argue that the police cannot create an exigency and then rely on it to excuse a warrantless entry into his home. *Williams,* 354 F.3d 497, 505.

In *Williams*, the defendants' landlord called the police after she searched the home for a water leak and found drugs, but no signs of a leak. The landlord asked

officers to re-search the home with her to find the water leak and because she was afraid to enter alone. Officers say they searched the home without a warrant because the water leak was the emergency that created the exigency to search.

The court disagreed and held that the police could not justify the warrantless entry: "The 'risk of danger' exigency applies only to situation involving the 'need to protect or preserve life or avoid serious injury… of others,'" and not to damage to carpet from a water leak. *Id.*

Here, no evidence suggests that the officers manufactured the medical emergency; there was no police-created emergency.

### D.  The Police Had Probable Cause To Arrest Belser

Belser argues that the officers lacked probable cause to arrest him because they did not have credible evidence that he engaged in criminal activity. "A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir.1993). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983). The police must have an "objectively reasonable basis for their belief" that a crime is being committed. *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005) citing *United States v. Ukomadu*, 236 F.3d 333, 337 (6th Cir. 2001).

8

Based on what the officers heard on the transmitter, their observations upon entering Belser's home, and their training and experience, there was an objectively reasonable basis for them to believe that Belser committed a crime.

Probable cause supported Belser's arrest.

### E.  Probable Cause Supported The Search Warrant

In his motion, Belser says the search warrant the police obtained was not supported by a valid warrant on probable cause. However, in his brief, Belser does not cite any case law or provide support for his argument.

Search warrant affidavits are presumptively valid. *United States v. Rodriguez–Suazo*, 346 F.3d 637, 648 (6th Cir. 2003). "When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit." *Id.* The Court considers the "totality of the circumstances" in determining if probable cause exists to issue a search warrant. Under this standard, "[t]he test for probable cause is simply whether there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *See United States v. Padro*, 52 F.3d 120, 123 (6th Cir. 1995).

The Court has found that the officers' initial entry into Belser's home was lawful. The affidavit provided a thorough recap of the events preceding and following the officers' entry into Belser's home. The affidavit detailed Cpl. Donaldson's training, experience, detailed knowledge of narcotics and drug trafficking, and detailed information from the CI outlining his prior connection to Belser. It detailed the drug transaction, which the officers witnessed over the transmitter, and the evidence of a drug transaction that they encountered on entering Belser's home.

9

Probable cause supported the search warrant. *See United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (A search warrant affidavit must "contain adequate supporting facts about the underlying circumstances for probable cause to exist....").

### F.  Fruit of The Poisonous Tree Doctrine Does Not Apply

Belser argues that the officers' warrantless entry was unconstitutional, and that the Court should suppress his arrest, the search warrant, and his confession because they were the fruit of evidence and information derived solely from the officers' initial illegal entry. *See United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010) (citing *Mapp v. Ohio,* 367 U.S. 643, 654 (1961) ("This exclusionary rule is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure.")).

Since there was no unconstitutional entry into Belser's home. This argument fails in its entirety.

## IV.   CONCLUSION

No Fourth Amendment violation occurred here. The Court finds: (1) The officers' warrantless entry into Belser's home was constitutional under the Emergency Aid Doctrine; (2) Belser's subsequent arrest and search warrant were supported by probable cause; and, (3) Belser's confession was not derived from an unconstitutional entry into his home.

The Court **DENIES** Belser's motion to suppress.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 18, 2016

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 18, 2016.

s/Linda Vertriest
Deputy Clerk